# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DAVID L. WHITE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 15-0289-CV-W-SRB |
| CITIMORTGAGE, INC., | ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff's Motion for Sanctions (Doc. #274). For reasons discussed below, the motion is granted in part and denied in part.

### I.     Background

Plaintiff David White filed suit against Defendant CitiMortgage, the loan servicer for Plaintiff's mortgage at the time of the events giving rise to this case, claiming violations of the Missouri Merchandising Practices Act ("MMPA"). Plaintiff alleges that Defendant misled him into believing that title to his home had been restored to him after Defendant had rescinded the foreclosure sale of Plaintiff's home, when in fact title was never restored to Plaintiff. Moreover, Plaintiff alleges that Defendant knowingly failed to restore title to Plaintiff and yet continued to demand and collect mortgage payments from Plaintiff knowing that title to the home subject to the mortgage was not titled in Plaintiff's name. The process that led to this dispute involved a modification of Plaintiff's loan. Discovery ended on January 22, 2016.

On June 4, 2014, Plaintiff propounded a request for production on Defendant, seeking "[a]ny and all documents that relate in any way to Plaintiff and any modification of Loan No. 771094180." (Doc. #275, p. 2). On July 9, 2018, over three years after the case was removed to

this Court from the Circuit Court of Jackson County, Missouri, Defendant sent Plaintiff a file containing several previously undisclosed emails involving Amy Cullen, a former employee of Defendant (the "Cullen Emails"). Plaintiff asserts that the newly disclosed Cullen Emails are "highly probative" of his claim under the MMPA and should have been disclosed as responsive to the June 2014 request for production. (Doc. #275, p. 1). Plaintiff argues that Defendant's delayed production of the Cullen Emails violated discovery rules and "changed the entire trajectory of the case." (Doc. #289, p. 2). Plaintiff asks this Court to exercise its authority under Fed. R. Civ. P. 26(g) and 37(c) to impose two forms of sanctions on Defendant: 1) attorney's fees and 2) allowing Plaintiff to inform the jury of Defendant's "withholding of the Cullen Emails." (Doc. #289, pp. 13, 23).

Defendant, on the other hand, argues that it has not violated Rule 26 and that the Cullen Emails do not substantially affect Plaintiff's position because they are "consistent with [Defendant's] past claims and the discovery provided early on in the case." (Doc. #296, p. 7). While acknowledging that its discovery responses "before July 2018 were incomplete," Defendant denies violating any discovery rules and claims that "the absence of these emails has not affected the substance of Plaintiff's claims or the course of the case." (Doc. # 296, pp. 4–5). Moreover, Defendant argues that the particular sanctions Plaintiff seeks are "extreme" and not "supportable on the facts or the law." (Doc. #296, p. 5).

## II.     Legal Standard

Federal Rule of Civil Procedure 26 imposes various affirmative duties that regulate the discovery process, two of which are relevant to the present motion. First, Rule 26(e) establishes an affirmative duty to timely supplement disclosures and discovery responses. Specifically, Rule 26(e)(1)(A) requires a party to "supplement or correct its disclosure or response in a timely

manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect."  Second, Rule 26(g) establishes "an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." Fed. R. Civ. P. 26(g) Advisory Comm. Note to 1983 Amendment.  *See also Garrett v. Albright*, No. 4:06-CV-4137NKL, 2008 WL 681766, at *8 (W.D. Mo. Mar. 6, 2008) (Rule 26(g) "imposes on each party and their counsel a duty to responsibly engage in pretrial discovery.").  In particular, Rule 26(g)(1) requires that every disclosure and discovery response "be signed by at least one attorney of record."  This signature "certifies that to the best of the person's knowledge, information and belief formed *after a reasonable inquiry*" that a disclosure is "complete and correct as of the time it is made" and that a discovery response is "consistent with the rules and existing law."  Fed. R. Civ. P. 26(g)(1)(A)–(B) (emphasis added).

The Rule 26(g) "duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances."  Fed. R. Civ. P. 26(g) Advisory Comm. Note to 1983 Amendment.  What is "reasonable" for Rule 26(g) purposes is "[u]ltimately . . . a matter for the court to decide on the totality of the circumstances."  *Id.*  The Rule 26(g) signature requirement "obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection" and "certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." *Id.*

The Rules pertinent to discovery also authorize—and sometimes require—courts to impose sanctions as a remedy for discovery abuse.  The general purpose of discovery sanctions is "'to penalize those whose conduct may be deemed to warrant' them and 'deter those who might

3

be tempted to such conduct in the absence of such a deterrent.'" *Sec. Nat. Bank of Sioux City, IA v. Day*, 800 F.3d 936, 942 (8th Cir. 2015) (quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)). Accordingly, Rule 26(g)(3) states that "if a certification violates [Rule 26(g)] *without substantial justification*, the court, on motion or on its own, *must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." (emphasis added). Also, Rule 37(c) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e)" and the failure is not "substantially justified" or "harmless," the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure" and "may inform the jury of the party's failure." Fed. R. Civ. P. 37(c)(1)(A)–(B). Rule 37(c) gives a district court "wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case" if a party fails to comply with Rule 26. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). The purpose of sanctions under Rules 26(g) and 37(c) is "to deter abuse and compensate the opposing party for 'all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly.'" *Johnson Int'l Co. v. Jackson Nat. Life Ins. Co.*, 19 F.3d 431, 439 n.10 (8th Cir. 1994) (quoting *In re Stauffer Seeds*, 817 F.2d 47, 50 (8th Cir. 1987)); *Vanderberg v. Petco Animal Supplies Stores, Inc.*, No. 17-2580, 2018 WL 4779017, at *3 (8th Cir. Oct. 4, 2018) ("The disclosure mandates in Rule 26 are given teeth by the threat of sanctions in Rule 37.").

If a court finds that discovery sanctions are warranted, the court must then determine what sanctions are appropriate. When determining appropriate discovery sanctions, "the district court should consider, inter alia, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the

4

order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527 F.3d at 692 (citing *Sellers v. Mineta*, 350 F.3d 706, 711–12 (8th Cir. 2003)).

Some district courts in other circuits have imposed sanctions in the form of an instruction to the jury that probative information was withheld in violation of discovery rules. *See Fanelli v. BMC Software, Inc.*, No. 1:11-CV-436-LMM, 2015 WL 13122473, at *4 (N.D. Ga. Apr. 29, 2015) (ordering discovery sanctions in the form of "provid[ing] a special instruction to the jury prior to the introduction of [a witness's] testimony explaining Defendant's failure to produce documents relevant to" a phone conversation that the witness had with the plaintiff until three years after discovery had opened); *F.T.C. v. AMG Servs., Inc.*, No. 2:12-CV-00536-GMN, 2014 WL 317781, at *12 (D. Nev. Jan. 28, 2014), *objections overruled sub nom. Fed. Trade Comm'n v. AMG Servs., Inc.*, No. 212CV00536GMNVCF, 2014 WL 12788195 (D. Nev. July 16, 2014) (finding that the plaintiff violated Rules 26(a) and 26(e) and "grant[ing] Defendants the opportunity to 'inform he jury of [Plaintiff's] failure' to comply with its initial disclosure obligations until" after the close of discovery); *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, No. CIV.A. 09-1350, 2013 WL 6577401, at *12 (W.D. Pa. Dec. 16, 2013), *aff'd*, 598 F. App'x 109 (3d Cir 2015) (denying motion for new trial on several grounds, including that "the court's jury instruction that defendants were required but failed to produce the written documentation . . . was appropriate and within the court's discretion").

### III. Discussion

#### a. Whether Sanctions Are Warranted

Plaintiff argues that Defendant's failure to produce the Cullen Emails before July 2018 violates both the Rule 26(e) mandate to timely supplement discovery responses and the certification requirement of Rule 26(g) because those emails are responsive to Plaintiff's June

5

2014 request for production. (Doc. #275, pp. 2, 7). Plaintiff argues that Rules 26(g)(3) and 37(c)(1) provide independent bases for discovery sanctions in this case. (Doc. #275, pp. 2, 6, 9). Defendant denies violating Rule 26(e). In fact, according to Defendant, imposing sanctions in this instance would be tantamount to punishing Defendant for simply doing what Rule 26(e) requires: supplementing its discovery responses once Defendant learned they were incomplete. (Doc. #296, p. 7). Defendant also denies violating Rule 26(g). Defendant claims that Plaintiff reads into Rule 26(g)(1) "a draconian duty to search every corner of a client's operations on the chance that documents may be found," a duty that Rule 26(g) does not impose. (Doc. #281, p. 8). Defendant concludes that "[b]ased on the totality of circumstances here, [Defendant's] supplemental production," i.e., the Cullen Emails, does not violate Rule 26(e) or (g) because Defendant "acted in good faith in providing the additional documents as soon as they were found." (Doc. #281, p. 12).

The Court finds that, based on the totality of the circumstances, Defendant has failed to comply with Rules 26(e) and (g). The Cullen Emails are responsive to Plaintiff's June 2014 request for production. Defendant should have produced them in response to this request or through a timely supplement to its responses much sooner than July 2018. While the parties disagree over the degree to which the Cullen Emails impact the case, no one disputes that these emails are probative and that "the Cullen emails produced before July 2018 were incomplete." (Doc. #296, p. 4). Defendant's delay in producing the Cullen Emails is also a "failure to provide information" within the meaning of Rule 37(c)(1). *See Trost v. Trek Bicycle Corp.,* 162 F.3d 1004, 1008 (8th Cir. 1998) ("[F]ailure to disclose in a timely manner is equivalent to failure to disclose.").

6

Moreover, the Court finds that Defendant's failure was neither substantially justified nor harmless. Defendant argues that "there is substantial justification for the supplemental production given that [Defendant] renewed its search for Cullen records once the court permitted her testimony over plaintiff's objection." (Doc. #281, p. 13). The Court rejects this argument. The fact that Defendant "renewed" its search for documents after the Court issued its order allowing Amy Cullen to testify at trial does not provide substantial justification for Defendant's delay in producing the Cullen Emails. Considering the fact that Amy Cullen "is a timely-disclosed, critical fact witness" and "the former CitiMortgage representative who made the inadvertent mistake that led to this case," (Doc. # 213, p. 1), this Court's prior orders governing witness testimony provide no justification—let alone a substantial one—for Defendant's late production of the Cullen Emails.

While Defendant never expressly argues that its delayed production of the Cullen Emails was harmless, Defendant argues that Plaintiff fails to show that the Cullen Emails "substantially affected [Plaintiff's] MMPA claim or the course of this litigation. (Doc. #296, p. 7). The history of this litigation, however, demonstrates that Defendant's delay in producing the Cullen Emails was not harmless. The Cullen Emails are probative of Plaintiff's MMPA claim, and Plaintiff would likely have used these emails in his pleadings, motions, and depositions. Therefore, considering the deterrent and compensatory purposes of discovery sanctions, the Court finds that such sanctions are warranted and now must determine which sanctions are appropriate.

### b. Whether the Requested Sanctions Are Appropriate

Plaintiff seeks two kinds of sanctions. First, Plaintiff requests sanctions in the form of attorney's fees. Plaintiff claims that the following depositions were "affected by the non-disclosure [of the Cullen Emails]: Kip Bilderbach at Millsap & Singer (entity receiving Amy

Cullen's directive to rescind the sale); both depositions of CitiMortgage's 30(b)(6) representative Joseph Geisz (admissions, impeachment); Freddie Mac's 30(b)(6) representative Dean Meyer (admissions); and both depositions of David White . . . ." (Doc. #289, p. 11). Plaintiff argues that these depositions "would have produced admissions and substantially affected the extensive motion practice in this case" had Defendant timely produced the Cullen Emails. (Doc. #289, p. 11). Plaintiff also requests attorney's fees for time spent on "the pleadings and briefs most poisoned by the withholding of the Cullen Emails." (Doc. # 289, p. 14). In particular, Plaintiff requests the following monetary sanctions: 1) attorney's fees for the first round of summary judgment motions; 2) attorney's fees for Plaintiff's prior appeal to the Eighth Circuit; 3) attorney's fees for the second round of summary judgment motions and the motion to reconsider; and 4) attorney's fees for Plaintiff's filings after Defendant disclosed the Cullen Emails. (Doc. # 289, p. 14–19).

Second, Plaintiff requests sanctions in the form of a jury instruction regarding Defendant's failure to produce the Cullen Emails. (Doc. # 289, p. 23). Plaintiff proposes the following "modification" of Plaintiff's punitive damage instruction: "In determining whether you believe the conduct of defendant was outrageous, you may take into consideration that defendant violated the rules of discovery when it withheld probative evidence until July 2018 that defendant was required to produce to plaintiff in July 2014." (Doc. #301, p.1). Plaintiff argues that such an instruction "is a correct application of a Rule 37(c)(1)(B) sanction because it focuses on [Defendant's] discovery abuse without unfairly tipping the scales on any other matter in the case." (Doc. #301, p. 5). Defendant argues that Plaintiff's proposed jury instruction "is an extreme sanction that is not narrowly tailored and is absolutely meant to punish [Defendant] and tilt the jury's determination." (Doc. #303, p. 4).

8

Considering the factors stated in *Wegener*, the Court finds that attorney's fees and a jury instruction are appropriate sanctions here. First, as discussed earlier, the reasons for noncompliance advanced by Defendant are not sufficient to defeat sanctions. Moreover, Defendant has declined this Court's invitation to present an affidavit explaining Defendant's years-long delay in producing the Cullen Emails. Second, the surprise and prejudice to Plaintiff caused by Defendant's failure to produce the Cullen Emails is significant. The Court agrees with Plaintiff insofar as Plaintiff argues that the Cullen Emails would have played an important role in several depositions and dispositive motions, and perhaps in Plaintiff's complaint itself. Third, no one argues that allowing the Cullen Emails into evidence would disrupt the order or efficiency of the trial. Finally, the Cullen Emails are important because of their relevance to Plaintiff's MMPA claim.

As to monetary sanctions, an award to Plaintiff of attorney's fees is appropriate to compensate Plaintiff for expenses he incurred as a result of Defendant's failure to timely disclose the Cullen Emails, but the fee amount Plaintiff requests is excessive. The Court will award attorney's fees to compensate Plaintiff for the impact that Defendant's conduct has had on any depositions conducted in this case. The parties shall file supplemental briefing regarding the amount of attorney's fees that should be awarded to compensate Plaintiff for this impact. In particular, the parties are directed to specify exactly which depositions were affected by the delayed production of the Cullen Emails, the actual time spent on those depositions, and the actual expense incurred as a result of Defendant's conduct.

As to sanctions in the form of a jury instruction, the one Plaintiff proposes is not appropriate here. Discovery rule violations are not relevant to punitive damages because a punitive damages award should be based on the underlying conduct warranting liability, not on

later litigation behavior. *Anderson v. Shelter Mut. Ins. Co.*, 127 S.W.3d 698, 703 (Mo. Ct. App. 2004) (citing *Call v. Heard*, 925 S.W.2d 840, 849 (Mo. Banc 1996)) (purpose of punitive damages "is to inflict punishment and to serve as an example and a deterrent to similar conduct, not to compensate the plaintiff for any loss sustained as a result of defendant's conduct in litigation"). Instead, the Court will provide the following special jury instruction before the Cullen Emails are introduced into evidence at trial or before Amy Cullen testifies at trial:

> You are about to hear testimony about emails involving Amy Cullen, a former employee of Defendant involved in the events that gave rise to this case. Under applicable Court Rules, Defendant was required to provide Plaintiff with certain emails to and from Amy Cullen that are relevant to this case. You will see some of these emails as exhibits admitted into evidence. Defendant was required to provide these emails in June 2014 but did not do so until July 2018.

This instruction will serve the deterrent goals of Rules 26(g) and 37(c) without "tilt[ing] the jury's determination." (Doc. #303, p. 4). The language of this instruction mirrors the modesty of similar instructions given by other district courts as a sanction for discovery rule violations. *See Fanelli*, 2015 WL 13122473, at *4; *AMG Servs., Inc.*, 2014 WL 317781, at *12; *Lichtenstein*, 2013 WL 6577401, at *12.

IV.   Conclusion

Accordingly, it is hereby **ORDERED** that Plaintiff's Motion for Sanctions (Doc. # 274) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Plaintiff shall file supplemental briefing regarding the attorney's fee sanction amount on or before October 16, 2018. Defendant shall file a response on or before October 22, 2018.

**IT IS SO ORDERED.**

                                                                          /s/ Stephen R. Bough
                                                                          STEPHEN R. BOUGH, JUDGE
                                                                          UNITED STATES DISTRICT COURT

DATE: October 10, 2018